Good morning, Your Honors. May it please the Court, Richard Urofsky is my name, and I represent the appellant Stephen Roth. Mr. Roth, as is clear from the briefs, was a substantial stockholder of Meritor Savings Bank at the time it was seized and placed into receivership with the Mr. Roth sold those shares. That is correct. What did the buyers think they were getting? Well, it's a little hard to know, but based on the sale price of three cents a share, not very much. Oh really? I think. Based on the sale price, they didn't think they were getting all right title interest in possession, which is the normal sales. They couldn't have. They couldn't One, there's a legal context for claims of a sort at issue here. Was Mr. Roth aware of that legal context? Oh yes. Okay. Did he use the United States mails or interstate communications to sell that stock? Probably. And if he did, isn't that a violation of the federal securities law if he's actually selling those rights? Absolutely not. For two reasons. One, the legal context at the time that occurred for claims of this nature, namely claims arising out of a bank seizure, were most charitably described as confused and murky. Nobody had any idea. You just told me Mr. Roth was not aware of his rights. I'm coming to that part. The second part of my answer is there was, at the time that sale took place, a class action, an alleged class action in place called flattery against the United States. And Mr. Roth was a member of the class on whose behalf recovery was sought. So any purchaser who was knowledgeable had to know that there were competing claims being made in an existing lawsuit, not based on ownership of the shares at the time Mr. Roth sold, but based on ownership of the shares at the time Meritor was seized. And Mr. Roth told the buyers that they weren't getting those rights? Mr. Roth, this was an anonymous sale. It was an interbroker sale. They weren't told any, as is typical in market sales, there are no representations made one way or the other. They're interbroker transactions. Before your time runs out, can I just shift gears a little to another one of your allegations, which goes to the breadth of the order that was issued by the Court of Federal Claims? Yes, you may. That doesn't affect, that breadth doesn't affect your current clients, correct? I mean, they've got the $7 million set aside for them, which I assume someone has calculated as the difference, right? So your objections with regard to the breadth of the order does not impact your current clients. It should not affect Mr. Roth's ability to receive relief. So your complaint about the breadth is to potential people that might appear in the future that have a claim? Who would have the same claim Mr. Roth has, that it is the date of seizure. The same legal claim, not the same claim. Mr. Roth is going to get his money or not get his money based solely on how it comes to the statute and not based on the breadth of the order, correct? Yes, Your Honor, I stand corrected. Just hypothetically, if we were to disagree with your statutory construction point, in other words, Mr. Roth loses, does that move the other argument as well? I mean, I assume the other argument to the extent if you acknowledge it's limited to future potential shareholders who have not yet been identified and who are not in Mr. Roth's group, your group of current clients, that claim would be predicated on their being construed as shareholders that are entitled to the contract. That is correct. It would certainly prejudice their claim. Wouldn't they be able to come in with a clean sheet? The nature of an order entered in a case in which they weren't a party or privy, it would seem to me, unless they are in privity, would be functus officio, right? That's why I said it would prejudice their claim because the legal hold, as I understand the question, would be that the controlling date was the date that the distribution of surplus was made or, more technically, judgment was entered directing the distribution of surplus as opposed to the date the bank was seized. I think I missed a step there. Okay, I'll sort it out. Well, no, so make sure I understand. So if we were to construe the statute as meaning that the shareholders that are entitled to compensation under the statute we're looking at are those that own the shares at the time of the CFC award and not going back to when receivership took place, then that would dispose, essentially, of any future argument others might make that deal with construction of the statute. I believe that's correct, Your Honor. Your Honor, Mr. Ross' argument before this court, I think, is quite straightforward. This is purely a question of statutory interpretation, namely whether the phrase depository institution shareholders, as used in Section 1821, refers to shareholders at the time of seizure or shareholders at the time judgment is entered. By the way, I think, given that we've asked you a lot of questions, you can go ahead and make your principal argument without regard to the fact that... And I think I can do that very briefly, Your Honor. The argument that Mr. Ross is advancing is predicated in part on the distribution section of Section 1821 and partly on the receivership formation section. Those are obviously related sections. And the main point is that the receivership formation section is so comprehensive, is so plenary that it sweeps the rights and economic interests of the depository institution and all its constituencies, stockholders, depositors, directors, and so forth, into the receivership. Consequently, there is nothing left in the shares of what is then the Shell Corporation. And that assumes that there is a Shell Corporation in one prominent case. Indeed, the only other prominent case we've been able to locate where there was a similar distribution made, which was the Seuss case. The government dissolved the failed institution. And therefore, there could be no shareholders because there was no corporation. And notwithstanding that, it was held in Seuss that a former stockholder could maintain the derivative action on behalf of the now seized institution and prosecute that claim. So, we believe and assert here that the continued ownership of shares in the Shell is not determinative of rights in the distribution. Those rights are purely statutory and derived from the distribution section of the receivership statute. That is our main point. And that point is either held directly in First Hartford, or it is very, very close to being held directly in First Hartford, where the rights are described as statutory rights, where there's a legally protected economic interest at the time the receivership is formed in the shareholders who owned the institution at the time it was seized. And that economic interest matures into a legal right at the time it's determined that there is a surplus to be distributed. And is your belief that that interest is completely unalienable under any circumstances? I don't think we need to reach that question. I think our position is that it cannot be sold so that the buyer would have a claim against the surplus or against the FDIC's receiver. There presumably could be a private arrangement whereby the seller commits to transfer the proceeds of any recovery to a buyer. But we do not believe that that interest can be sold. It's not a share of stock. It's a right to participate in a receivership. Okay. Thank you, Mr. Vesky. We will reserve our return. One minute, or what did you have, two minutes? Two minutes of rebuttal time to you. Mr. McCarron. Yes. Thank you, Your Honor. Jeffrey McCarron on behalf of the moving and appellant John McCarron. Standing before this court, Your Honors, is the appeal of the order by Mr. McCarron denying his to the shareholders to the complete exclusion of all others and also without regard for the distribution scheme provided in 12 U.S.C. 1821 D11 relating to the priority of distribution. Now the court of claims denied Mr. McCarron's motion to intervene and the court did not deny that motion to intervene for any reason which relates to Rule 24. Of course, Rule 24 relates to and also for res judicata. Both of those reasons for denying the motion for intervention are wrong and they are also improper reasons for addressing the motion for intervention. This court realizes, I'm sure, that the intervention is provided for in Rule 24 and it's Rule 24A2 specifically, which relates to this case because it was intervention as a right in the court, that is the court of claims realized that it was Rule 24A2, but it did not decide the factors relating to Rule 24A2 intervention as a right. Instead, it went on to decide simply that there was no subject matter jurisdiction and it also decided that it was precluded because of res judicata. However, that decision should have been simply whether to grant intervention pursuant to meaning whether those factors provided for in Rule 24A2 were satisfied or were not satisfied. And of course, the jurisdiction and then the res judicata issues would have been properly addressed if at all at some point in time after decision on the motion to intervene. Instead, the court didn't even decide the motion to intervene which Rule 24A2 requires. It's not a Rule 24A2 were satisfied, which according to the court's decisions suggests that those factors were or at least it wasn't indicated that those factors were not satisfied. I mean, the court went on to say that Mr. McCarran had an interest which he needed to protect and the parties in the case were not in a position to protect his interest. In fact, they were likely to be adverse. Consequently, it is apparent that the Rule 24A2 factors were satisfied and was error for the court to deny intervention. The court's decision based on jurisdiction is not applicable in the sense that subject matter jurisdiction is not needed for intervention motions. There's no independent jurisdiction requirement in this. Courts of the country have decided that especially in instances where you have a court as is the court of claims where there's limited jurisdiction, there is an ancillary jurisdiction is sufficient to supply that source of jurisdiction over which the court can decide the claims. But in any event, the court went on to decide those very issues not related to McCarran's claim but or a motion to intervene but with respect to who should be the recipients of the distribution of the assets of the merits to a state which it either had jurisdiction to decide or it was no different than McCarran's situation and the court had jurisdiction to make that decision about whether he was appropriate candidate to participate in the distribution of those assets. Consequently, the jurisdiction reason expressed by the court that is the absence of subject matter jurisdiction was error as a basis to deny the motion to intervene. Res judicata doesn't apply because, of course, res judicata depends on the existence of a decision which is based on the merits. There was never a disposition on the merits either of McCarran's claim as presented in the motion for intervention or the motion to intervene. Previously, there had been a motion to intervene filed in 1996 which the court held on to for 10 years until 2006 and at that time expressed... What about the proceedings that took place in the 90s in the court in Pennsylvania? Those proceedings were against the receiver and they were based on a claim in the receivership. At the time, it was... There hadn't been an adjudication that there was surplus and it was at a time when the decision was whether... Rather, the decision made by the Third Circuit after the court... The district court had made a decision was that pursuant to the receivership statute, the receiver, the FDIC as receiver could repudiate the contract but it did not address the issue. Are you bound by that decision? Well, in the context of what happened then thereafter where it was decided by the court and upheld by this court that there was an improper receivership. Well, is that really what the holding was? I mean, I thought the holding was simply that FDIC breached its memorandum of understanding with Meritor. Well, the court went on to say that... The court of federal claims went on to express that the receivership was improper, that it should never have taken over the bank as a receiver. Yeah, should not have imposed the receivership on the bank and then awarded damages as a result. But the court can't use or rather the government can't use the receivership statute as a way of the institution which never belonged in receivership in the first instance. Of course, we know that from 1821 D11 which provides that there's a distribution scheme not unlike you would experience or have in bankruptcy court where if there's a surplus as there definitely was and is in this case, then the distribution has to be to creditors in advance of distribution to defeating the claims of creditor, valid claims of creditors because that would boost them above where they would have been in the event there hadn't been a receivership. The whole contention by the shareholders are rather Meritor because of course the shareholders are receiving it only derivatively because of their interest in the institution. The whole position by Meritor is that it was an improper receivership and of course that the government breaches contract by eliminating goodwill as a factor to be considered in a capitalization requirement. And so therefore, what happened was the government never should have imposed a receivership. You know that because the court of claims upheld by this court decided that the award had to be net of all the receivership expenses which otherwise would have been allowed if it had been a proper receivership and instead made an award net of all those expenses and net of taxes. Okay. Your time has expired. We'll reserve your rebuttal time and we'll hear from first Mr. Mizoguchi. Good morning, Your Honor. Am I allowed to use my 12 minutes and however I wish to allocate them? Sure. Sure. And I'm joined by counsel at the FDIC. That's fine. And may it please the court, we respectfully submit the court should affirm the trial court's decision because denying the Roth intervenors claims because that decision is in accord with the plain text of section 1821 D11 and it's also in accord with the prior disinterested determinations of the FDIC when it has confronted this question in the Benjamin Franklin receivership and in this case before the trial court when the FDIC had no stake in the issue in terms of which shareholder or non-shareholder would be paid but rather just wanted to make a determination to do the right thing and apply the statute that it is charged with administering correctly. You know I'm not sure that plain language gets you very far in this case. It seems to me shareholders is the question is what is the meaning of the word shareholders and simply say now these guys are shareholders people that now hold the pieces of paper that say merit or stock and therefore it takes over. Well Mr. Uroski's argument is they're not shareholders. They're just holders of a piece of paper which is essentially monopoly money. Now why is he wrong other than telling me that the plain language of the statute for shareholders? Yes your honor. Well first of all starting with the text of D11 it doesn't just include the word shareholders although that you would say is definitive. It also tells you when you look at that question. It says after the receiver has paid all higher priority claims the receiver shall make a distribution to shareholders. So you have that temporal aspect. Right but once again the people that now hold these pieces of paper are not shareholders because the corporation ceased to exist. There was no further interest to be held by way of a shareholder or anything else. Then that argument again brings you back to the people who were shareholders at the time of the receivership. Right? No your honor. If not why not? Because there there's no basis for saying that people who that the shares that Meritor issued cease to be shares in Meritor just because there's a receivership. Okay. I understand that the argument of the Roth intervenors is that section D2 of 1821 is what commands this argument that essentially shares cease to exist. That's not a If you look at the text of D2 it is true that it has some sweeping language about once a receivership is imposed that the general powers in fact that's the caption of D2. The general powers that are conferred include rights and titles of any stockholder or depositor with respect to the institution. That has never been construed to mean for example if you're a depositor that suddenly you no longer have deposits. It has never been construed to mean just because you're a shareholder in a bank that goes into a receivership you no longer own your shares. So it does confer the right to manage the bank on the receiver. It does not strip the private property of the depositor or the shareholder. And the question that was asked earlier is a good one. If that were the case what did Mr. Roth think he was selling? Well I guess the answer to that is he was selling the possibility that you would win this case. Well exactly and he got compensated for it too your honor because But that doesn't mean that he was selling nothing. I mean he was selling something. And indeed if you win this case will turn out to have a lot more than $51,000 worth of value. And what he received under market theory was the fair market value of the possibility that this case would produce a surplus payoff. So he's already been compensated exactly for what he might have been entitled to as a shareholder. He sold his right to participate in a distribution to another. That other person assuming they still hold the shares is the shareholder within the meaning of D11 who is entitled to be paid. And many of whom have been paid. The other way you can tell that D2 doesn't strip a shareholder's ownership of its shares just because there's a receivership is when you look at the absurd result that occurs when you match up the D2 language with D11. If it really did mean that then D11 would be meaningless because if there were no shareholders after the point of receivership then when D11 says to the receiver after you've taken care of paying all prior creditors then you shall pay shareholders. Well under the Roth intervenors interpretation of D2 there are no shareholders after the day of receivership. Well the shareholders are the people that were holding the share by their theory or the people that were holding the shares at the moment that the receivership was instituted right? And D11 says those shareholders of Meritorious shall be paid. Right and so if those are the shareholders then you've got your shareholders. But that further qualification your honor that does not appear in the language of D11. Congress said you'll pay after you pay the prior creditors this is in the receivership at the point of receivership then you shall pay to a shareholder. If Congress had intended to change what is the plain language of the statute which basically says pay the depository institution's shareholders it presumably would have added language to the statute to clarify that something other than what appears in the text needs to happen and that is that even if you no longer are a shareholder so long as you were a your suggestion is the language as long as all Congress would have to do with to put in shareholders as of the date of if that is what Congress had intended and at least that is not what Congress had intended. It turns corporate law on its head. That's correct your honor and that brings me to the second prong of our argument and that is amicus in this case before the trial court were current shareholders who had bought after the date of receivership on the understanding that they would own all the rights that's accrued to a shareholder the court trial court took note of this and it held that in if there is any ambiguity in the statute then it's appropriate and they agreed with our position to look to common understanding of law what when shares are transferred when shares are transferred without any disclosed or agreed upon restriction on what gets transferred everything gets transferred whatever so even if the distribution in theory is being credited back to meritorious shares on the date of the receivership those shares were transferred by Mr. Roth to another for consideration and he got paid the fair market value at the time presumably he took a tax loss deduction at the same time too so his recovery now would be a windfall. What about the breadth of the order? How can the how would the trial court have the right or ability to foreclose on future well the fullest the answer your honor is the full scope of our potential liability is the 276 million dollars affirmed by this court the trial court told us that after nearly 20 years it was going to direct that the award be paid out without waiting for Mr. Roth's appeal to end because there's an escrow Mr. Roth is taken care of in terms of whether there may be any need to pay him but there were no other claims your honor before the court there have been no other claims made like Mr. Roth through intervention so nothing the court did was inappropriate in that it simply foreclosed and made final our liability with respect to the 276 and foreclosed at least putatively somebody who hasn't emerged yet but might well to the extent or do you say that they haven't been foreclosed notwithstanding the language of the court's order I'm sorry the first part of that your honor well in other words what we're concerned with here I take it is somebody that pops up and with all apologies to Mr. you're asking I don't think he made the right arguments I've got a better argument for showing why I should I should win and he goes into the court of federal claims and he presents his case do you think that he's barred by the order that was entered in this case by the trial judge yes your honor well first of all why because he wasn't a party to that action unless he's in privity no but the subject matter in the action your honor is the 200 276 million breach of contract derivative you're making a kind of in rem type argument I mean why would he be barred is since he wasn't a party to this action it doesn't matter what the breadth of the order that was entered in this case does it I mean you he could have said and what's more no one will be able to bring a contract claim against the United States for the next five years that doesn't bar anybody except parties to this case well correct I mean and there are no other parties to this case well we don't know that I mean that's that's the concern is well about the breadth of the order right to the yes to the extent that any individual had a claim to participate in in the in the distribution that in the ordinary course would be something we would consider to be under the jurisdiction that governs the FDIC in a manner you would take to the FDIC and take up for the district court it's only the accident the accident of history in this case that Mr. Ross claims have been permitted to be entertained as if the receiver was the United States if somebody else wanted to make that kind of claim they should have intervened in a timely manner sometime within the past 20 years different argument to say they'd be untimely fine if they're untimely they bring a case next year and they're untimely but they ought not the argument is or at least you ought to be defending why they can be foreclosed not because they're untimely but because the judge in this order foreclosed them from bringing it he didn't say because anything filed past the state would be untimely anyway so I'm going to sort of rule on that question even one that's not before me that's correct your honor what about Mr. McCarran's argument I want to turn to those yes your honor Mr. McCarran's there are two reasons principal reasons why Mr. McCarran's appeal should be or rather the court's denial of his motion should be affirmed first of all Mr. McCarran's claim at bottom is a claim predicated upon the employment severance agreement that he had with in the district court affirmed by the third circuit so the predicate of his would-be intervention is something that's barred by issue preclusion claim preclusion and that was one basis on which it is appropriate to affirm the court second one is the very nature it's appropriate to decide that issue and resolve that issue in the context of the rule with regard to intervention as opposed to allowing him to intervene and then disposing of his claim because of those reasons but yes your honor because well there are two the second reason I was going to bring up is there's a lack of jurisdiction to entertain the nature of the claim that Mr. McCarran is presenting again his claim is based on an employment agreement with meritor meritorious product is a private party it is essentially a dispute between two private parties meritor and Mr. McCarran the Tucker Act does not permit entertaining that claim an intervener has to have a claim that's vindicable in the intervener's own right to come in and that's the 441 I think it's 14th street case we cite Mr. McCarran unfortunately does not have a claim vindicable in his own right it's a claim against meritor receiver did repudiate that claim but that was pursuant to the receiver's statutory authority to do so that decision was affirmed by the third circuit it's final there's nothing his problem is that he lacks a claim to bring to the receiver and say oh I should be paid first because his claim has been precluded by prior litigation to bring I'm sorry go ahead I'm he can't really bring that claim into the court of federal claims and say see I should be paid because the court of federal claims would have to look at because what what is the nature of this claim and the nature of this claim is one in over which the trial court lacks jurisdiction now turning back to the rest of the kind of issue what do you say to Mr. McCarran's argument that the there is no rest to the kind of effect of the prior litigation in the eastern district of pennsylvania third circuit because the receivership has been found to be invalid the first defect with that your honor is that that argument is premised on the notion that there was a holding in this case to the effect that the receivership was invalid that's not the the holding in this case is that the FDIC corporate breached the contract with meritor so what which had it not breached that the argument is they would have been right but at the time that the FDIC dealt with Mr. McCarran it dealt with him under its statutory powers to administer receiverships one of those powers includes determining determining whether to affirm or repudiate contracts with the failed bank and in this case the FDIC receiver determined that a three-year golden parachute would be a burden it repudiated so you're saying that I take it that the the fact that the receiver or its predecessor has breached a contractual obligation does not render everything that the receiver does in its capacity as a receiver invalid and correct your honor okay and even if we're inbound it's final as a result of the prior litigation there's nothing to reopen okay um very well um I do have a question yeah I do uh and and that is on the the timing of someone popping out of the woodwork with another claim I don't see that they're closed that is uh from a collateral attack from coming in and saying in effect um the judge was wrong when and and attacking the the finality of that decision as it applies to them I want you to discuss that well your honor our position is that the United States' maximum liability is 276 and we've paid that out pursuant to the trial court's order for someone to come in under the Tucker Act and make the kind of claim you're talking about which we would ordinarily maintain is something that would have to be taken to the FDIC directly under its statute and litigated there and it's disputed to bring it up through the district court just come here though rather they would need to have come in our view in in the same way that Mr. Roth did in some timely more timely intervention dealing with this question that we're dealing with right now so is it no you're right it is possible that someone could come in and try to sue if they were to do that I think we would be asserting what I just asserted or they could go to the FDIC and make that kind of argument well we'll reserve no you don't have rebuttal time that's right you're at right all right um Mr. Buchanan uh Mr. Buchanan you have three minutes thank you your honor Thomas Buchanan for the plaintiff appellee uh Mr. Slattery uh we just have two points to make your honor and we made those in the brief but uh that is that we support the position of the United States with regard to Mr. McCarran we believe he fully litigated his contract claims federal district court in Philadelphia he appealed them and lost in order for him to pursue a claim against the estate he would have to establish his contract claims first because obviously he was suing the receivership and if there's no money in the receivership he can't recover any damages but the first thing you have to do establish liability on his contract claims and then collect and then he would collect against the estate he failed in the first instance he failed he appealed he lost he tried to intervene and he lost because he didn't have a claim for liability we also have a position with regard to the sort of rightness of these claims that are being advocated by Mr. Roth with regard to other shareholders who sold their shares and who may come forward we don't think those claims are right for him to proceed on those and we don't believe he has standing to pursue those he has protected himself Mr. Roth that is because we have reserved 7.6 million to cover his share should this court rule in his favor but we don't believe he has standing to proceed on behalf of any other former shareholders of Meritorious Savings Bank so that's that's our position. So your view is he doesn't have standing to challenge the scope of the order? Mr. Roth has standing but he doesn't have standing to challenge it on behalf of other shareholders who have sold their stock they had six years from the breach to pursue their contract claims they didn't pursue those Mr. Roth or others could have come in within that six years and pursued their claims they could have brought a class action they failed to do that so you have to have a contract claim in this derivative action to have to recover no one else has pursued that in fact no one else has made a claim whatsoever I think the court has discussed this in the concept well could someone come in administratively make a claim against the receiver say I was a former shareholder I wanted to claim my view would be that they would have had to claim within six years according to the statute well yes but that may be but we're mixing apples and oranges here I mean the first question I think was about the scope of the foreclosure by the sweeping nature of the trial judge's order your response is well they'd be untimely those are two different things maybe they would be untimely but the question that has concerned me and this first question is setting aside untimely suppose that there just weren't a timeless problem suppose there weren't a problem of non-intervention in the Roth action would the order itself foreclose that well I think incumbent within the order is the notion that they didn't no one else has come forward in a timely fashion although not stated therein that was something that was discussed in the briefs that led up to the order but yeah someone could make an administrative claim at this time with to the receiver but in the normal course what the receiver would do is okay show us proof of your claim and that would be the shares and so it would be denied then they could go to district court and challenge that I think they could do that I think practically speaking the order by having all the money distributed except for the 7.6 million has made it difficult for anyone else who may have a claim to come forward so are all book shares in the possession of someone that is do you know that book shares are held by a known person I believe that there there were there's 6,000 shareholders who have collected who held 95 percent of the shares and they've been paid out I believe there's approximately 10,000 shareholders who have not made a claim and that accounts for about 11 million dollars which is less than five percent of the total and considering that you know the time frame that's going by and I've dealt with other receiverships it's not uncommon that people have died and moved on so but the FDIC has sent out notices to all the the shareholders of record very well let's see Mr. Uroski I think you have we give you your two minutes back I'll be very brief your honest first thing I want to point out on the question which is the primary question on this appeal about who the proper shareholders are to receive the distribution the government has not taken a consistent position on that question throughout the litigation when the plaintiff Mr. Slattery sought to amend his complaint to alter the class he was protecting to shareholders on the date of judgment as opposed to shareholders on the date of seizure the government said the following quote this court should consider the appropriateness of a class action in the context of those persons allegedly injured at the time of the act complaint of not those who are speculating on this lawsuit and the basis for the government's position at that time was that this was a derivative action and there is case law under rule 23.1 that says the purpose of the derivative action is not to prosecute claims of people who are trading in controversies that it's against the policies underlying rule 23.1 my second point is that selling shares does not necessarily entail selling every right and power associated with the shares the most common instance of that is where shares are sold after a record date and the seller retains the right to vote the shares or receive the dividend and so forth what I say there's a there's a restriction it's subject to a restriction and our argument is that in this case the restriction is even more universal because the shares have been deprived of all rights associated with them and it is the shareholder you're selling your what you're saying is that your client is selling something valueless which is why I asked if you were selling an interstate in the in selling something not valueless three cents a share and worth three cents for the ability to assert a claim that eventually was honored by the claims court I think this court should be aware that every current holder of shares has been offered compensation either compensation has been paid or compensation has been offered and not claimed and that quite apart from the seven and a half million dollars reserved from Mr. Roth there is as counsel observed approximately 11 million dollars simply unclaimed here so it's not as though the people who bought those shares have any kind of legitimate grievance about not receiving what they're entitled to they got more than what they're entitled to uh thank you Mr. Yourofsky we'll uh thank you for giving me the honor of addressing thank you uh Mr. McCarron if I maybe just make a few points quickly it is not the situation in the eastern district of Pennsylvania case which then was taken to the third circuit that there was ever an adjudication with respect to the validity of the contract claim the only issue presented in that case the only issue that which was decided by the courts was whether the claim could be properly repudiated by the FDIC as receiver or whether there was some white knight exception to the rule the rules relating to receiverships that was the only and sole issue was never adjudicated that McCarron did not have a contract-based right to either it but you just said what was adjudicated was that the receiver was entitled to repudiate the repudiation piece the canon and also the government suggested the idea that that the contract claim was decided meaning whether he did or didn't have a contract whether the circumstances triggering the obligation to pay were satisfied under the under the uh pursuant to the provisions of the contract those issues were never adjudicated it was never a debater about the issues in fact because everyone acknowledged that the payment obligation existed but for the 1821 FIREA allowing for the rights of the receiver of course this court should wonder if if if it's a situation that the receiver gets exercises rights without regard for the receivership and its validity and I point out that this court's decision affirming uh the early when this matter was before this court previously said right in it the government caused meritor to be forced into receivership which it would not have been forced into well but in this case that that doesn't mean that the receiver therefore every single act taken by the receiver was invalid or was somehow uh uh outside of its its authority right well we don't need to we don't need to get to that point that's where the point is that was I thought the whole receivership of your whole challenge well no because the whole the whole reason for FIREA and in particular that aspect which allows for receivership rights or rather powers is to deal with institutions which are under capitalized and need to be put into receivership and then control over protection of the FDIC assets meaning the insurance fund in this particular case the insurance fund does not come into play because it was decided by the court and affirmed by this court that the insurance fund was never implicated and in fact the receivership was was not a problem was not proper and of course it is a situation and it's our contention that in the event this case had been adjudicated prior to the case in the eastern district of Pennsylvania and the third circuit when it was assets and the court wouldn't have been then the receiver would not have been able to repudiate the agreement because it would not have been a burden on the estate very well thank you thank you we thank all counsel the case is submitted